**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) No.:<br>) 4:17-CR-00208-WTM-GRS-1<br>) |
| EUGENE ALLEN,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

**BRIEF IN SUPPORT OF DEFENDANT'S RIGHT TO CHALLENGE
INTERCEPTION OF HIS CELL PHONE CONVERSATIONS**

**I.  Introduction**

Mr. Allen (hereinafter "Allen"), intercepted on a cell phone while incarcerated, presents the Court with this Opening Brief on why he can challenge that interception. Before "cutting to the chase" on Allen's case, a brief exploration of Title III is in order.

**(a) The General Statutory Scheme**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (18 U.S.C. § 2510 *et seq*.) sets forth a detailed procedure for interception of wire, oral, or electronic communications, which is

1

otherwise a felony, 18 U.S.C. § 2511, and subject to civil penalties, *Id*. §2520. Of note *sub judice*, without a full exposition on Title III, is the following:

| | |
|---|---|
| <u>First,</u> | when enacted in 1968, there were no cell phones; and Title III has not been amended since the decades of cell phone availability and usage.[1] |
| <u>Second,</u> | an "aggrieved person" is one who has been a party to ***any*** intercepted wire, oral, or electronic communication. ***See*** 18 U.S.C. § 2510(11). Allen is an "aggrieved person" under Title III. |
| <u>Third,</u> | Title III contains its own exclusionary mandate. 18 U.S.C. § 2515. Thus, a person who is "aggrieved" has "standing" to enforce Section 2515. |
| <u>Fourth,</u> | Title III contains no reference to the concept of a "reasonable expectation of privacy," its only reference is to the ***right*** of an "aggrieved person" to vindicate the statutory exclusionary rule embodied therein. |

**(b) <u>A Short Legislative History of Title III</u>**

The predecessor to the modern federal wiretap statutory scheme was the Federal Communications Act of 1934, 47 U.S.C. § 605 (1970). ***See U. S. v. Jones,*** 542 F.2d 661, & n.10 (6th Cir. 1976). In the late Sixties, dissatisfaction with this Act, academic criticism, and the reports of scholarly committees drove Congress to create a new wiretap statute: the Omnibus Crime Control and Safe Streets Act of 1968.

---

[1] However, there have been prisons since before 1968, as Captain obvious will note here. ***See Carpenter v US***, ___ US ___ 138 SCT 2206 (2018) (discussing the ubiquity of cell phone and the privacy rights accompanying their usage). Title III has not been amended to refer to cellphones and/or prisoners.

One important factor in the creation of the 1968 Act was a series of contemporaneous Supreme Court decisions addressing the constitutionality of wiretapping.² Foremost among these was the ***Berger*** decision, where the Court rejected a New York wiretapping statute. ***See Berger v. U. S.***, 388 U.S. 41, 63 (1967). While discussing a pre-Title III wiretap, the Supreme Court emphasized that "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." ***Id.*** at 63. The Court in ***Berger*** went on to recognize that although wiretapping is a more expedient form of investigation, expediency in law enforcement must ultimately yield to the requirements of the Fourth Amendment "before the innermost secrets of one's home or office are invaded." ***Id.*; See Also U.S. v. Kalustian***, 529 F.2d 585, 589 (9th Cir. 1976).

The wiretap provisions of the Omnibus Crime Control and Safe Streets Act of 1968 are now codified at 18 U.S.C. §§ 2510 – 2520. Because the electronic intercept statutes are found in the third title of the 1968 Act, "Title III" has become a common shorthand for federal wiretaps and wiretap litigation.

Given today's wildly expanding tolerance for wiretapping, it is remarkable to recall that in enacting Title III in 1968, Congress actually intended to ***increase***

---

² *See, e.g., U.S. v. Martinez*, 498 F.2d 464, 468 (6th Cir. 1974) ("Though the New York 'Eavesdropping Law' was held unconstitutional in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), in pointing out the deficiencies of the New York statute the Court indicated the requirements for a constitutional electronic surveillance law. It is clear that Congress gave careful consideration to the opinions in *Osborn, Berger,* and *Katz* in drafting 18 U.S.C. §§ 2510-2520, Title III of the Omnibus Crime Control and Safe Streets Act of 1968.")

3

protections for individuals against surveillance and recording. This goal was summarized in one Senate Report:

> Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. To assure the privacy of oral and wire communications, Title III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause.

*Jones*, 542 F.2d at 668, *quoting* S.Rep. No. 1097, *reprinted* in U.S. Code Cong. & Admin. News 1968, 90th Cong., 2d Sess., at 2153.

### (c) Importing REP into Title III is a Unique Violation of the Separation of Powers Doctrine

Let's be clear from the outset: the concept of REP relates to ***Fourth Amendment standing***. *See Rakas v. Illinois*, 439 U.S. 128 (1978) ("[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant …".) Therefore, in Fourth Amendment litigation, adjudication often starts – and ends – by answering the easiest question first: Fourth Amendment standing.

There are, however, two layers of protections available to those subject to wiretaps: the Fourth Amendment, ***and*** the statutory requirements of Title III. ***See U.S. v. Donovan*** 429 US 413, 432, n.22 (1977) ("The availability of the suppression remedy [for Title III], as opposed to constitutional, violations … turns on the

provisions of Title III rather than the judicially fashioned exclusionary rule aimed at deterring violations of the Fourth Amendment rights".)

Because wiretap law is statutory, and Fourth Amendment exclusionary rules are court created, federal courts cannot import Fourth Amendment exclusion exceptions into Title III suppression remedies. The "standing" provisions and suppression remedies in Title III, however, were created by Congress – and federal courts cannot alter or limit those remedies. As the Sixth Circuit has explained, the goals of Title III prevent courts from importing Fourth Amendment exceptions into the wiretap suppression remedy:

> Title III has as its dual purpose (1) protection the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.
>
> [A]lthough Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern. *Fultz v. Gilliam*, 942 F.2d 396, 401 (6th Cir. 1991) (citations omitted; emphasis added).
>
> In light of this overriding concern for protection of privacy, and because the Act sets out when certain uses or disclosures of wiretap material are authorized, it may be implied that 'what is not permitted is forbidden.'

*U.S. v. Wuliger*, 981 F.2d 1497, 1506 (6th Cir. 1992). *See, e.g.*, *U.S. v. Wuliger*, 981 F.2d 1497 (6th Cir. 1992) (Refusing to recognize 'impeachment exception' to Title III in civil cases); *U.S. v. Vest*, 813 F.2d 477, 484 (1st Cir. 1987) ("We therefore decline to read into section 2515 an exception permitting the use of illegally-

intercepted communications in perjury prosecutions."); ***In Re Grand Jury***, 111 F.3d 1066, 1077-78 (3rd Cir. 1997) (Refusing to permit unlawful interceptions, obtained with "clean hands", to be used as evidence in grand jury proceedings).

## II. <u>Title III Applies to Prisoners</u>

So, the real issue is whether Title III applies to prisoners like Allen. The short answer is it does.

In ***Campiti v. Walonis***, 611, F.2d 387 (1st Cir. 1979), a police officer used an extension phone (remember those?) to intercept telephone conversations between inmates in a state correctional institution.[3] In construing the Wiretap Act, the First Circuit bluntly held;

> We hold that [the Wiretap Act] does not provide a basis for a "prison exemption" from the Act.

Likewise, the Sixth Circuit recognized that,

> [C]ongress apparently never specifically considered the issue which is before us when it passed Title III.

***U.S. v Paul***, 614 F.2d 115, 116 (6th Cir. 1980).

The specific issue, identified by the Court, was whether monitored phone calls between an inmate and an "unidentified female" were subject to suppression under

---

[3] The extension phone was part of an "override system" which could intercept any call in the facility. There was a "main switchboard" (let's get into the "wayback" machine) through which the extension was wired. The defendants used the extension when, ***inter alia***, there was "reason to expect illegal inmate activity". ***Id.***

6

Title III. *Id*. The Court explicitly separated the *statutory* claim from the Fourth Amendment issue:

> We note that defendants' claim is purely statutory… The government takes the broad view that Title III does not apply at all because it was merely intended to codify the Supreme Court's constitutional decisions in (cits. omitted). According to the government, surveillance that does not require a warrant under the Fourth Amendment should be automatically permissible under Title III.

*Id*. at 116

Not so, says the First Circuit. Congress did *not* intend that prison monitoring be coextensive with the Constitution. *Id*. at 117. Thus, the Circuit agreed that Title III *did apply*, but the monitoring came within a statutory exception.[4]

The Second Circuit has held that "Title III clearly applies to prison monitoring." *U.S. v Amen*, 831 F.2d 373 (2nd Cir. 1987).[5] In *Amen* the court relied, in part, on the District Court opinion in ***Crooker v. U.S. Dept. of Justice***, 497 F. Supp. 500 (D. Conn. 1980), holding *inter alia,* that Title III

> [c]ontains no specific exclusion for monitoring prison telephones.

Indeed, the Court found that the position that Title III did not apply in the prison context, had "no merit" because the "relevant legislative history is plainly to

---

[4] Over the dissent of Senior Circuit Judge Harry Phillips who, while agreeing with the denial of the motion to suppress, took the position that "Congress never intended Title III … to apply to prisons." Same argument the government makes here, and recognizing the "anomalous result" the majority opinion created. However, if that was an issue in 1980, there has been no statutory fix by Congress. The courts simply cannot legislate.

[5] Although the Court went on to hold that the "monitoring in this case fell within the consent exception to Title III." *Id.*

7

the contrary." *See S.Rep*. No. 1097, 90th Cong., 2d Sess., 2177-97, U.S. Code Cong. & Admin. News 1968, p. 2112."

No court has held that Title III does not apply in the prison context.[6]

### III. <u>Title III applies to Allen</u>

The United States relies primarily on the reasoning in the unreported district Court opinion in *U.S. v. Savala*, (SD Col. 2105) 2015 WL 46835. In *Savala*, the defendant was an inmate in Donovan State Prison in California. The United States obtained three wiretap orders for the cellular phone *used by Savala*. *Id*. Savala asserted only that (1) his Fourth Amendment rights were violated, and (2) the Title III warrants "lacked the required showing of necessity." *Id*. The government conceded standing.

The Court started its analysis by stating several propositions:

    (i)    Title III was enacted in 1968, before the invention of the cellular phone;

    (ii)    Title III has been amended but still does not specifically mention cellular telephones; but

    (iii)    Title III applies to cellular phones; and

    (iv)    Title III was "enacted to protect the Fourth Amendment rights to privacy" for telephone conversations.[7]

The Court went on to address the Cell Phone Contraband Act of 2010, P.L.

---

[6] Indeed, most prison Title III litigation involves not whether Title III applies, but whether an exception to Title III applies to the facts of the case under review. Those cases are numerous, and inapposite here.
[7] The Court doesn't address whether Title III applies in the prison context, but implicitly presumes so.

111-225, S. 1749, declaring cell phones as contraband in federal prisons under federal law. Although the case before the Court involved a *state prisoner* – as does the case *sub judice* – the Court reviewed the only two *federal* cases addressing violations of 18 U.S.C. §1791.

Building on that flawed foundation, the Court found "an *implicit exception* to the requirements of Title III." (emphasis added). Thus, the Court found Title III does not apply to a prisoner's cellphone. *Id*. The house will crumble and fall if the foundation cannot support it. Or, the district court opinion in *Savala* rests on a house of cards.

Let's start with the Court's original building blocks. There is no discussion, but the Court implicitly recognizes that Title III does apply in the prison context. That is correct. The Court recognizes that Title III applies to cellular phones. That is also correct. The Court then equates enactment of Title III with the Fourth Amendment right to privacy. That is *wrong*. As noted above, Title III was intended to *increase* protections for individuals, and is *not* coextensive with the Fourth Amendment. If it was, it would be entirely superfluous. The foundation is starting to crumble.

The Court then gets further derailed (mixing metaphors) by its discussion of federal law, although the case before it – and the case at bar- involved state prisoners. Yet the Court – ignoring the plain statutory language – finds an "implicit exception"

9

to Title III! Welcome to Congress, Judge Benitez. A more explicit example of judicial legislating cannot be imagined. The Court makes no effort to conclude that the statutory language is ambiguous, so as to invoke the intent of the legislature. ***See, e.g. Consolidated Bank, N.A., Hialeah, Florida v. U.S. Dept. of The Treasury,*** 118 F.3d 1461 (11th Cir. 1997). The Court instead, dives directly into what it believes to be an "ironic interpretation" of Title III if the defendant's "implicit argument" were correct. So, Judge Benitez, it is fine for the Court to find an "implicit exception" to unambiguous language, but the defendant's "implicit argument" would lead to "ironic", or absurd results?

It is not for the Courts to find "implicit" exceptions to ***unambiguous*** statutory language. The wall between the legislative and judicial branches of our government are simply not that thin. If it were so, every Court in the land could impose its own preferences on legislative commands. That cannot be – and is not – the law.

**IV. <u>Conclusion</u>**

Although the conclusion reached by the ***Savala*** court may be intellectually satisfying, its reasoning is legally flawed. This Court should reject it and find that Title III does, in fact, apply to Allen.

This 24th day of September, 2018.

        Respectfully submitted,


        <u>/s/ Bruce S. Harvey</u>
        LAW OFFICE OF BRUCE S. HARVEY
        ATTORNEYS FOR DEFENDANT
        Bruce S. Harvey, #335175
        146 Nassau Street
        Atlanta, Georgia 30303
        (404) 659-4628

# **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and foregoing Brief upon opposing counsel by e-filing, facsimile transmission, hand delivery, or by depositing a copy of same in the United States Mail with sufficient postage attached thereon, addressed as follows:

> Brian T. Rafferty
> E. Gregory Gilluly, AUSA
> U.S. Attorney's Office
> P.O. Box 8970
> Savannah, Georgia 31412

This 24th day of September, 2018.

> /s/ Bruce S. Harvey
> LAW OFFICE OF BRUCE S. HARVEY
> ATTORNEYS FOR DEFENDANT
> Bruce S. Harvey, #335175
> 146 Nassau Street
> Atlanta, Georgia 30303
> (404) 659-4628