FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2018 NOV 29 PM 2: 13
CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR417-208 |
| | ) | |
| EUGENE ALLEN, and | ) | |
| KARTEU OMAR JENKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Defendants Eugene Allen and Karteu Jenkins[1] move to suppress evidence from intercepted communications between Allen and various third parties, including Jenkins, over Allen's cell phone.[2] Allen's right to

---

[1] Defendant Jenkins filed a motion to adopt Defendant Allen's "Motions/Briefs." Doc. 454. That motion is **GRANTED**. Doc. 454. The Court will refer to the joint motion and its arguments as "Allen's."

[2] Allen's motion has taken a circuitous procedural path. First, Allen and Jenkin's co-defendant, Charmaine Sims moved to suppress the intercepted communications. Doc. 202; doc. 223. Allen then adopted her motion. Doc. 234; doc. 384 (Order). Sims's motion was mooted when she plead guilty. *See* doc. 323. Jenkins filed a separate motion to suppress wiretap evidence, which he seeks to amend by submitting a supporting affidavit. Doc. 339; doc. 439. His request to amend is **GRANTED**. Doc. 439. In August 2018, the Court heard limited oral arguments on the preliminary issue of the parties' rights to challenge the wiretaps. Doc. 441. Allen's brief was filed to provide supplemental argument on that question. Doc. 452. Jenkins joins that argument. *See* doc. 454. As a result of the procedural tangle, there is no specific document associated with Allen's pending motion to suppress.

The argumentation in Allen's supplemental brief on the question of the parties' right to suppress the intercepted communications, under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, is far more

challenge introduction of the intercepted communications is disputed, however, because he was incarcerated at all times relevant to this motion. The cell phone he used to communicate, therefore, was contraband. Allen argues that he nevertheless has the right to challenge the intercepted evidence because he is an "aggrieved person" under Title III, 18 U.S.C. § 2510, *et seq.* His argument fails.

The Supreme Court has established that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Such socially-recognized expectations establish the limits of the Fourth Amendment's protection. *See, e.g., Minnesota v. Carter*, 525 U.S. 83, 88 (1988). Allen does not dispute that the intercepted communications occurred in his prison cell. His motion, therefore, depends upon whether Title III provides more practical privacy in his

---

thorough than the treatment the issue receives in Jenkins's original brief. *See* doc. 339 2, 9. Accordingly, the Court will consider the argument in Allen's supplemental brief, which Jenkins has adopted, as entirely superseding the argument in his original brief.

Finally, Jenkins' *pro se* motion, seeking suppression of the intercepted communications, was filed in violation of this Court's Local Rule 44.2. *See* S.D. Ga. L. Crim. R. 44.2 (prohibiting represented party from filing *pro se* motions, except motions for new counsel and motions to proceed *pro se*). Accordingly, it is **DISMISSED as moot**. Doc. 500.

cell-phone communications than he otherwise enjoys under the Fourth Amendment.

Allen argues, correctly, that the protection afforded by Title III is not necessarily identical to the Fourth Amendment's. Congress may certainly provide more privacy protections than the Constitution requires. Title III may, in some circumstances, do just that. Allen's entitlement to any additional protection afforded by Title III, however, is complicated by the fact that his possession of the cell phone at issue was, itself, criminal. After all, like federal law, Georgia law establishes that it is "unlawful for an inmate to possess . . . a telecommunications device . . . without the authorization of the warden or superintendent or his or her designee." O.C.G.A. § 42-5-18(c); *see* 18 U.S.C. § 1791 (establishing criminal penalties for any "inmate of a prison, [who] . . . possesses or obtains . . . a prohibited object[,]" which is defined to include "a phone or other device used by a user of commercial mobile service . . . in connection with such service"). Such unlawful possession is a felony, punishable by one to five years imprisonment. *See* O.C.G.A. § 42-5-18(d)(1). Given that his possession of the cell phone in question is illegal, the question posed by Allen's motion is whether, even assuming Title III

3

does extend protection to communications not otherwise protected by the Fourth Amendment, it extends to communications of an entirely illicit nature.

Allen's argument that he has a right to maintain the privacy of his conversations, though conducted on an unlawful device in a location where he has no reasonable expectation of privacy, is not frivolous. He persuasively argues that, if the statutory language of Title III established such a right, the remedy for any uncomfortable outcome would come from Congress, not the courts. *See* doc. 452 at 10. But the argument's further premise—that Title III's treatment of an "aggrieved person" cannot accommodate the well-established contours of Fourth Amendment jurisprudence—goes too far. *C.f. Hudson*, 468 U.S. at 525-26 ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").

The cases concerning the precise question at issue—a prisoner's ability to challenge the introduction of intercepted communications from his contraband cell phone—are unanimous in rejecting the argument Allen advances here. Such challenges are not sanctioned by Title III, particularly when it is read in conjunction with the federal statute

criminalizing inmates' possession of cell phones. *See United States v. Garibay*, 2015 WL 468404 at * 2-3 (S.D. Cal. Feb. 3, 2015) (holding that "Congress created an implicit exception to the requirements of Title III" because, *inter alia*, Congress unambiguously determined prisoners' cell phones to be contraband); *United States v. Morris*, 2016 WL 4267990 at * 5 (N.D. Ga. Aug. 15, 2016) (approving of and adopting the reasoning of *Garibay*); *see also United States v. Savala*, 2015 WL 468352 (S.D. Cal. Feb. 3, 2015).

The *Garibay* court plausibly characterized the argument that a prisoner using a contraband cell phone has a statutory expectation of privacy, though he has none under the Fourth Amendment, as involving an "ironic" interpretation of Title III. 2015 WL 468404 at *4. Allen's brief seizes on that language as indicating that the court exceeded its authority and trespassed into the legislature's domain. *See* doc. 458 at 9-10. Terminology aside, the argument "that a prison inmate, who by virtue of his initial crime and conviction, when he is placed in a cellblock where he has no Fourth Amendment rights, and when he commits a further crime by obtaining and using a contraband cellular telephone, acquires a statutory right under Title III to be free from law enforcement

5

eavesdropping, unless a Title III wiretap order is first obtained" is certainly counterintuitive. *Garibay*, 2015 WL 468404 at *4.

Title III provides a right to suppress the contents of intercepted communications to "[a]ny aggrieved person" in virtually any proceeding. 18 U.S.C. § 2518(d)(10)(a). An "aggrieved person" includes "part[ies] to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(12). Capacious though that language may be, courts have consistently recognized that it implements existing Fourth Amendment standing rules. *See Alderman v. United States*, 394 U.S. 165, 175 (1969); *see also, e.g., United State v. Ruggiero*, 928 F.2d 1289, 1303 (2nd Cir. 1991) ("aggrieved person" should "be construed in accordance with standing requirements usually applied to suppression claims under the Fourth Amendment." (quotes and cite omitted); *United States v. Montemayor*, 2018 WL 4517634 at * 2 (N.D. Ga. Aug. 27, 2018) (An 'aggrieved person,' as defined both by the Act, [cit.], and in accordance with the Supreme Court's decision in *Alderman v. United States*, [cit.], indicates that the Act's standing requirement implements existing Fourth Amendment standing rules."). And a defendant challenging a wiretap bears the

burden of proof to demonstrate standing under the Fourth Amendment standard. *United States v. Flores*, 2007 WL 2904109 at \*2 (N.D. Ga. Sept. 27, 2007).

Interpreting Title III as Allen urges, therefore, would be more than merely "ironic". Rather, it would ignore longstanding judicial interpretation of its language in the context of Fourth Amendment jurisprudence. Thus, although Allen's interpretation of the statute is, perhaps, logical, statutory interpretation is not a matter of pure logic. *See, e.g., United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (recognizing that "[t]he *starting point* for all statutory interpretation is the language of the statute itself," but enumerating further principles of interpretation, including "look[ing] beyond the plain language of a statute . . . to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." (emphasis added)). Courts have consistently understood Title III's empowering of any "aggrieved person" in the context of the Fourth Amendment. Given that approach, Allen's argument fails.

Since Allen (and by extension Jenkins) has failed to establish his status as an "aggrieved person," the Motions to Suppress should be **DENIED**. Doc. 339.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 29th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA